UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BARBARA GAMBILL, et al.,          :
                                   : NO. 1:06-CV-00724
        Plaintiffs,               :
                                   :
                                   :
   v.                              :
                                   : **OPINION AND ORDER**
                                   :
DUKE ENERGY CORP.,                 :
                                   :
        Defendant.                :
                                   :


        This matter is before the Court on Defendant's Motions
for Summary Judgment (docs. 76 and 77), Plaintiffs' Response (doc.
87), and Defendant's Replies (docs. 94 and 95).  For the reasons
indicated herein, the Court GRANTS the Defendant's motions.

## I.  BACKGROUND

        On February 6, 2007, Plaintiff Barbara Fruehling Gambill
("Plaintiff Gambill") and Eric French ("Plaintiff French") filed an
Amended   Complaint,   raising   numerous   federal   and   state
constitutional and statutory claims (doc. 5).[1] Plaintiffs allege
that their employment was improperly terminated by Defendant and
claim (1) Age Discrimination in violation of the Age Discrimination
in Employment Act ("ADEA"); (2) Retaliation in violation of the
ADEA; (3) Age Discrimination in violation of O.R.C. § 4112; (4)
Retaliation in violation of O.R.C. § 4112; (5) Promissory Estoppel

---

        [1]  Plaintiff Gambill and Plaintiff French may, at times, be
referred to collectively herein as "Plaintiffs."

as to Plaintiff Gambill; (6) Breach of Ohio public policy; and (7) an Employee Retirement Income Security Act ("ERISA") violation as to Plaintiff French (Id.). In addition, they request a declaratory judgment and injunctive relief (Id.) On September 17, 2008, Plaintiff French filed a Second Amended Complaint, claiming retaliation in violation of the Family and Medical Leave Act ("FMLA") (doc. 44).

On December 22, 2008, Defendant filed a Motion for Summary Judgment on Plaintiff Gambill's Claims (doc. 76) and a Motion for Summary Judgment on Plaintiff French's Claims (doc. 77), arguing that Plaintiffs cannot present evidence that age was a determining or motivating factor in their terminations and that neither has presented evidence of pretext; that Plaintiffs are procedurally barred from bringing retaliation claims and, in any event, these claims fail on the merits; that any age-or-retaliation-related public policy claims must fail as a result; that Plaintiff French's ERISA claims fail because he did not present a claim recognized by ERISA; and that Plaintiff French's FMLA claims fail either procedurally or on the merits. The Plaintiffs responded thereto (doc. 87), arguing that numerous material issues of fact exist that preclude the grant of summary judgment. Defendant filed its replies (docs. 94 and 95), and this matter is ripe for adjudication. For the following reasons, Defendant's motions will be GRANTED.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff Gambill and Plaintiff French are former employees of Defendant Duke Energy Corporation's ("Defendant") predecessor Cinergy Services, Inc. ("Cinergy") (doc. 5). Both Plaintiffs worked in Cinergy's legal department (Id.). Plaintiff Gambill was born on June 27, 1955, and had been employed as Senior Counsel by Cinergy employee for sixteen years at the time of her termination (doc. 87). Plaintiff French was born on January 29, 1955, and had been a Cinergy employee for twenty-nine years at the time of his termination (Id.).

During late 2005 and early 2006, Defendant began the process of acquiring Cinergy (doc. 5). Defendant anticipated that the acquisition would result in some duplication of positions and, as a result, a large number of employees were offered severance packages in January 2006 in exchange for voluntary termination prior to the acquisition (Id.). In March 2006, this offer expired, and affected employees could then elect to either sign an involuntary severance agreement and release of claims or join a "transition pool" and continue their employment for up to six months while they sought other positions within or outside the company (Id.). Defendant informed employees that it would immediately terminate those in the transitional pool at the end of the six month period (Id.). Neither Plaintiff took the voluntary severance package (Id.).

Plaintiffs present statistical evidence indicating that of the eighty-three attorneys in the combined legal departments of Defendant and Cinergy thirteen voluntarily resigned, and Defendant terminated an additional nine (doc. 87). Plaintiffs further contend that six of the seven terminated local attorneys are over fifty years old (doc. 5), while all of the twenty-two attorneys in Defendant's legal department who were younger than forty were retained but only sixty-four percent of the attorneys forty years old or older were retained (doc. 87). Defendant contests Plaintiffs' statistical evidence, arguing that the numbers presented to the Court are incorrect and, in any event, the sample is too small to have any statistical significance (docs. 76 and 77, citing <u>Tinker v. Sears, Roebuck & Co.</u>, 127 F.3d 519, 524 (6th Cir. 1997)).

In April 2006, Defendant provided Plaintiffs with a copy of its severance and release offer, requiring each of them to release their legal claims against Defendant to receive severance (doc. 87). As required by the Older Workers Benefit Protection Act ("OWBPA") whenever an employer asks a group of employees to release their claims under the ADEA, Defendant also gave Plaintiffs information about the ages and job positions of the employees being terminated (<u>Id</u>.). However, Plaintiffs contend that Defendant simply gave Plaintiffs a disk containing thousands of pages of information with no organization to the files (<u>Id</u>.).

## A.  Plaintiff Gambill

On January 13, 2006, Plaintiff Gambill interviewed with Paul Newton, an attorney with Defendant and one of the co-chairs of the integration team for the legal department, which was charged with recommending appropriate staffing levels post-merger (doc. 87).  Plaintiff Gambill states that during that meeting Newton told her in no uncertain terms "that he wanted her to remain with the company" (doc. 5).  In addition, she claims that he said, "We're not supposed to make promises, but I sincerely hope you won't take the severance package" (doc. 87).  However, on March 10, 2006, Catherine Stempien, the head of Defendant's litigation department and the other co-chair of the integration team, informed Plaintiff Gambill that there was no position for her with Defendant (Id.). Plaintiff Gambill states that at that time she replied that she would like to consult an attorney (Id.).  Plaintiff Gambill's termination date was April 3, 2006, three weeks after Stempien notified her that no position was available to her with Defendant; in contrast, other attorneys in Plaintiff Gambill's department were given termination dates 30-60 days after their notification (Id.). Plaintiffs contend that the replacement for Plaintiff Gambill, Julie Ezell ("Ezell"), is substantially younger and less qualified (Id.).

Plaintiff Gambill contends that she was the company's subject matter expert on environmental law (Id.).  In addition, she

claims that her performance evaluations reflect the high level of service she provided to her clients (Id.). Nonetheless, Defendant chose Ezell over Plaintiff Gambill to fill the attorney position responsible for environmental law post-merger (Id.). Ezell had been a litigator under Stempien's supervision, and her environmental law experience was far less than Plaintiff Gambill's (Id.). Defendant contends that Ezell was hired for the new position because she scored higher on the objective evaluations used by the hiring attorneys (doc. 76). Finally, Plaintiff Gambill alleges that there was a youth culture in the legal department, that a manager made a comment about her technological incompetence, that she was criticized for using outside counsel while younger attorneys were not, that Ezell was given an action plan while Gambill was not, and that Gambill was removed from three matters and replaced by younger litigators (Id.).

## B. Plaintiff French

Plaintiff French had been with the company in various roles since 1977 (Id.). Most recently, he held a general litigator position responsible for low-level litigation support, primarily in bankruptcy and foreclosure for Cinergy (doc. 77). Plaintiff French was notified in March 2006 that his employment would be terminated, and his termination date was July 31, 2006 (doc. 87). Plaintiffs contend that Plaintiff French was chosen for termination less than six months before he reached full eligibility for early retirement,

while several significantly younger, less-experienced attorneys were retained by Defendant (Id.). Under Cinergy's retirement plan, an employee could retire with full retirement benefits if his years of service added to his age equaled at least eighty-five; as part of Defendant's voluntary severance package, employees received an additional six points in the equation, allowing those eligible to retire early with full benefits (doc. 77). With these additional points, Plaintiff French fell short of the required eighty-five and requested that he be given an additional six points, which Defendant refused to do (Id.).

Plaintiff French contends that age-related statements by Stempien and others, including that he was an "old-timer" with the company and commenting on his graying beard, are evidence of age animus of those with decision-making power (doc. 87). Plaintiff French further states that he missed work at various points during 1991, 1998, 2001, 2004 and 2005 for varying serious medical conditions and that, as necessary, he properly notified Defendant of his need for leave pursuant to the FMLA (Id.).

**III. LAW AND ANALYSIS**

Summary judgment is appropriate when there is no dispute as to a material question of fact and one party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. This Court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. See LaPointe v. United

<u>Autoworkers Local 600</u>, 8 F.3d 376, 378 (6th Cir.1993). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). Only disputed material facts, those "that might affect the outcome of the suit under the governing law," will preclude summary judgment. <u>Id</u>. at 248. The function of the court in assessing a summary judgment motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id</u>. at 249. If after reviewing the record as a whole a rational fact-finder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue for trial. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**A. Plaintiffs' State and Federal Age Discrimination Claims: Counts I and III**

The Age Discrimination in Employment Act of 1967 ("ADEA") as amended, 29 U.S.C. § 623(a),[2] prohibits employers from

_____

[2] Plaintiffs also allege violations of Ohio's age-discrimination laws, O.R.C. § 4112. Under Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis. <u>See</u> <u>McLaurin v. Fischer</u>, 768 F.2d 98, 105 (6th Cir.1985) (citing <u>Barker v. Scovill, Inc.</u>, 6 Ohio St.3d 146, 451 N.E.2d 807, 808 (1983)). <u>See also</u> <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 357 (6th Cir. 1998). Therefore, the Court applies the same analytical framework to Plaintiffs' state-law age-discrimination claims as it does for the ADEA-based claims. The Court's resolution of Plaintiffs' ADEA-based claims

discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Id. Plaintiffs may use either direct or circumstantial evidence to prove unlawful discrimination but, as the United States Supreme Court recently held, regardless of the type of evidence presented, the burden of persuasion remains at all times with the plaintiff to demonstrate that "age was the 'but-for' cause of the challenged...action." Gross v. FBL Financial Services, Inc., 129 S.Ct. 2343, 2352 (2009).

An employee seeking to establish a prima facie case of age discrimination where the employee's position is eliminated pursuant to a reduction in force ("RIF") or a reorganization must show (1) that he or she was forty-years old or older at the time of his or her dismissal; (2) that he or she was qualified for the position; (3) that he or she was discharged; and (4) "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990). The "heightened standard" of the fourth prong that emerges in the RIF context appears to be the only aspect of this RIF prima facie test that the parties dispute. See Geiger

likewise resolves Plaintiffs' state-law age-discrimination claims. See, e.g., Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008)(applying analysis under federal Americans with Disabilities Act to Ohio's disability discrimination statute to resolve both claims).

v. Tower Automotive, — F.3d —, 2009 WL 2836538 *7 (6th Cir. September 4, 2009)(in a work force reduction context, heightened standard needed to establish prima facie case).

Should Plaintiffs succeed in their prima facie case, under the three-step McDonnell Douglas framework,[3] Defendant must next present a legitimate business reason for the terminations and, to survive Defendant's Motions for Summary Judgment as to the age-discrimination claims, Plaintiffs must then proffer evidence sufficient for a reasonable jury to find, by a preponderance of evidence, that Defendant's reason for terminations was mere pretext and that, but-for their age, Plaintiffs would not have been terminated.

### 1. Plaintiff Gambill

Defendant argues that Plaintiff Gambill cannot meet the fourth prong of the RIF test because she has offered no direct or statistical evidence of age discrimination in her termination, and her allegations are both factually unsupported and legally

_____

[3]  The McDonnell Douglas framework was developed in the Title VII context and, while the lower courts have typically applied this framework to ADEA claims, the Supreme Court has never definitively decided whether this is appropriate.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  However, the Sixth Circuit has consistently imported the McDonnell Douglas framework into ADEA cases, and recently addressed this very concern, erring on the side of continuing in the vein of its prior decisions.  See Geiger v. Tower Automotive, — F.3d — , 2009 WL 2836538, *5 (6th Cir. September 4, 2009). Therefore, the Court will analyze Plaintiffs' pretext-based claims according to the McDonnell Douglas framework.

irrelevant (doc. 76). Defendant contends that Plaintiff Gambill's
view that Ezell, her younger replacement, lacked experience, which
Plaintiff Gambill presents as evidence of age discrimination, is
conclusory and subjective and cannot be used to survive summary
judgment (doc. 76, citing among others <u>Hein v. All American Plywood
Co.</u>, 232 F.3d 482 (6th Cir. 2000)). Finally, Defendant contends
that Plaintiff Gambill's use of Ezell's retention to satisfy the
fourth prong of the RIF test fails because Ezell was retained in a
job that was different from the job Plaintiff Gambill had held,
that it was not an environmental attorney position but, instead, a
new position that merged environmental law with health and safety
law and that Ezell was simply better qualified (<u>Id</u>.).

Further, Defendant argues that even if she could
establish a <u>prima</u> <u>facie</u> case, Plaintiff Gambill has produced no
evidence to establish pretext (doc. 76). Defendant argues that
there is no dispute that Gambill was let go as part of a RIF, and
that her only argument is that she was a better employee than
Ezell, who was retained (<u>Id</u>.). Defendant contends that this is a
matter of the company's good faith business judgment, which is
inappropriate for the Court to second-guess (<u>Id</u>., citing <u>Hendrick
v. Western</u>, 335 F.3d 444 (6th Cir. 2004)).

In response, Plaintiff Gambill argues that the position
given to Ezell was Plaintiff Gambill's same position, and that the
retention of the much younger Ezell satisfies the fourth RIF prong

(doc. 87).  In addition, she argues that she was more qualified for the position, that others had concerns about Ezell's performance, and that Defendant's attempt to hide behind its "business judgment" is ill-fated (<u>Id</u>., citing <u>White v. Baxter Healthcare Corp.</u>, 533 F.3d 381 (6th Cir. 2008)).  In addition, Plaintiff Gambill argues that Plaintiffs have produced statistical evidence sufficient to satisfy the fourth RIF prong, thus making their <u>prima</u> <u>facie</u> case.

### 2. Plaintiff French

As to Plaintiff French, Defendant again argues that insufficient evidence exists of age-based discrimination, as, in its view, Plaintiff French similarly cannot establish the fourth RIF prong (doc. 77, citing <u>Hein</u>, 232 F.3d 482).  Defendant argues that the statements allegedly made regarding Plaintiff French's "old-timer" status and the color of his beard cannot, as a matter of law, create an inference of age animus (doc. 95).  Even if he could make his <u>prima</u> <u>facie</u> case, however, Defendant argues that Plaintiff French cannot discredit Defendant's legitimate business reason for terminating his employment: Plaintiff French's position was eliminated as part of the move away from Cinergy's business model and towards Defendant's, and the work Plaintiff French had been doing was to be done in future by paralegals supervised by an attorney (doc. 77).

In response, Plaintiff French argues that the comments regarding his beard and his "old-timer" status reflect age animus

and that much of the work he had been performing has since been outsourced to outside counsel (doc. 87). Therefore, he argues, the elimination of his position could not have been a cost-saving measure but was, instead, pretext for dismissing him because of age bias (doc. 87).

### Analysis of Age-discrimination Claims

For the following reasons, the Court finds that, as to the age-discrimination claims, Plaintiffs have not adduced evidence sufficient to raise a genuine issue of material fact that but for Plaintiffs' age, Defendant would have retained them.

### a. Disparate Treatment

### 1. The **Prima Facie** Showing

Plaintiffs indisputably meet the first three elements of the McDonnell Douglas/Barnes test: they were over forty at the time of the terminations; their employment was terminated; and they were qualified for their respective positions. To meet the fourth element, Plaintiffs must present "additional direct, circumstantial, or statistical evidence tending to indicate that [Defendant] singled [them out] for discharge" because of their age. See Barnes, 896 F.2d at 1465.

Plaintiffs argue that there was a culture favoring younger attorneys; that statements regarding technological competence, "old-timer" status and Plaintiff French's beard indicate age animus; that less-qualified but younger attorneys were

retained in Plaintiffs' positions; and that statistics demonstrate that Plaintiffs were adversely affected because of their age (doc. 87). These arguments, Plaintiffs assert, meet the standard of the fourth prong of the McDonnell Douglas/Barnes test.

The Court finds that Plaintiffs' evidence could reasonably be seen to indicate that the decision to terminate Plaintiffs may have been based on their age. Generally, an employer's comments referring directly to an employee's age can support an inference of age animus. Phelps v. Yale Sec., Inc., 986 F.2d 1020 (6th Cir. 1993). Such statements are not admissible, however, if they are too abstract and irrelevant or prejudicial. Chappell v. GTE Prods. Corp., 803 F.2d 261, 268 n.2 (6th Cir. 1986). Here, Stempien, a decision-maker, calling Plaintiff French an "old-timer" is not abstract, irrelevant or prejudicial. Instead, an inference could reasonably be made that this comment and the references to Plaintiff Gambill's technological competence and Plaintiff French's beard were motivated by age animus. In addition, the Court finds that the retention of Ezell and the statistical data regarding who was retained and who was terminated could reasonably support such an inference.

### 2. The Legitimate, Nondiscriminatory Reason and Pretext

Plaintiffs having succeeded in making their prima facie showing, under the next step of the McDonnell Douglas burden-shifting analysis, Defendant must "articulate some legitimate,

nondiscriminatory reason" for terminating Plaintiffs' employment.
See, e.g., Kline v. Tenn. Valley Auth., 128 F.3d 337, 342 (6th
Cir.1997) (quoting McDonnell Douglas, 411 U.S. at 802).   If
Defendant meets its burden, then the burden shifts back to the
Plaintiffs to show that the proffered reason is a mere pretext
masking Defendant's discriminatory actions and that, but for
Plaintiffs' age, Defendant would not have terminated their
employment.   Plaintiffs can demonstrate pretext "by showing that
the proffered reason (1) has no basis in fact, (2) did not actually
motivate the defendant's challenged conduct, or (3) was
insufficient to warrant the challenged conduct." Wexler v. White's
Fine Furniture, Inc., 317 F.3d 564, 576 (6th Cir.2003) (quoting
Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir.2000)).

     Here, Cinergy merged with and into Defendant, and the
combined entity engaged in a merger-driven reduction in work force
(doc. 94).   The fact of the merger is undisputed, and the Court
finds it to be a sufficiently legitimate, nondiscriminatory reason
to satisfy Defendant's burden of production.   See, e.g., Conley v.
U.S. Bank Nat. Ass'n, 211 Fed.Appx. 402, 407 n.1 (6th Cir.
2006)(plaintiff's failure to dispute that defendant's reduction-in-
force was legitimate, nondiscriminatory reason satisfied second
part of McDonnell Douglas three-part analysis).

     Plaintiffs next must rebut this proffered reason.
Plaintiffs contend that they can defeat Defendant's Motions for

Summary Judgment if they present "evidence raising at least issues of fact that either Defendant's articulated reason is a pretext for age discrimination *or* that its reason, while true, is only one of the reasons for its conduct and another motivating factor is Plaintiffs' age" (doc. 87, citing <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507 (1993)(alleged Title VII violation)). Plaintiffs have not accurately captured the standard they face. Plaintiffs must adduce sufficient evidence such that a reasonable jury would find that the merger-driven reduction in work force was merely a pretext and that Defendant would have retained Plaintiffs but for their age. <u>See</u> <u>Gross</u>, 129 S.Ct. at 2352. This, Plaintiffs simply have not done.

In <u>Gross</u>, the Supreme Court was presented with a question regarding jury instructions for a mixed-motive analysis of a disparate treatment claim under the ADEA. <u>Id</u>. at 2348. Typically, <u>Price-Waterhouse</u> is the guidepost for "mixed-motive" cases using direct proof, while <u>McDonnell Douglas</u> is used for cases relying on indirect proof. <u>See</u>, <u>e.g.</u>, <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 119 (1985)(direct evidence of discrimination renders <u>McDonnell Douglas</u> inapplicable). However, in <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 101 (2003), the Court held that a Title VII plaintiff is not required to present direct evidence in a mixed-motive case. The question before the Court in <u>Gross</u>, then, was whether the same held true for ADEA plaintiffs, and the Court

held that it does not. <u>Gross</u>, 129 S.Ct. at 2348. The Court explicitly held that an ADEA-plaintiff bringing a disparate treatment claim, unlike a Title VII plaintiff, "must prove, by a preponderance of the evidence, that age was the 'but-for' cause" of the termination," <u>Id</u>. at 2352, and, on its own initiative, effectively disallowed a mixed-motive approach in the ADEA context. <u>Id</u>. at 2346 (holding that a mixed-motive jury instruction is "never proper in an ADEA case").

One of the first Courts of Appeal to do so, the Sixth Circuit recently wrestled with the Gross decision in <u>Geiger v. Tower Automotive</u>, — F.3d —, 2009 WL 2836538 *6, (6th Cir. September 4, 2009). In <u>Geiger</u>, the court was presented with an ADEA-based discrimination claim in the context of a reduction in force. <u>Id</u>. at *7. First, the court noted that to the extent that its cases applied the Title VII-based burden-shifting framework to mixed-motive ADEA claims, those cases were overruled by Gross. <u>Id</u>. at *4. However, <u>Geiger</u> was more appropriately cast as a pretext-based case, not a mixed-motive case and, as such, the court used the <u>McDonnell Douglas</u> framework. <u>Id</u>. at *5. Geiger had alleged, <u>inter alia</u>, that a younger person had been selected for a position for which he was qualified, that his supervisor made comments to others that age discrimination was a concern in terminating the plaintiff, and that the defendant had manipulated an email to present more favorable discovery. <u>Id</u>. at *7. The

court found that Geiger had not met his prima facie case because he did not provide "additional evidence that he was terminated...on account of his age, as required by the heightened standard for work force reduction cases." _Id_. at *9. Even if he had met this heightened standard, the court said, the plaintiff had not established that the reduction in force was actually pretextual and age was the real reason for plaintiff's discharge. _Id_.

Here, Plaintiffs argue that the economic needs of Defendant were met through voluntary resignations thus obviating the need for involuntary terminations, so Defendant's proffered reason of a RIF must be pretextual (doc. 87). Plaintiffs rely on the testimony of Defendant's Vice President of Human Resources and on a memo sent to the legal departments of the two companies stating that Defendant expected to have to reduce its attorney positions by 12 (doc. 87). This evidence simply does not prove pretext. Instead, it is evidence of a reduction in force pursuant to a merger—such a process is necessarily somewhat fluid when the workforce is not fungible. As Defendant correctly noted, and as the record supports, "the number 12 could not and did not exist in a vacuum..." (doc. 94). Even if the number twelve had somehow been written in stone and that number had been achieved by voluntary resignations thus meeting Defendant's workforce reduction needs, this evidence does not prove age animus. It simply points to an on-going process of staff reorganization pursuant to a merger.

Plaintiffs also contend, <u>inter</u> <u>alia</u>, that the hiring of Ezell over Plaintiff Gambill, the "pattern" of hiring younger attorneys, the way Defendant presented the information required by the OWBPA, and Defendant's use of outside counsel for work previously done by Plaintiff French as further evidence of pretext. Again, however, none of this evidence actually refutes Defendant's proffered reason for the terminations: the evidence does not demonstrate that the RIF "has no basis in fact," that Defendant was not actually motivated by the RIF to terminate Plaintiffs' employment or that the RIF was "insufficient to warrant" the terminations. <u>See</u> <u>Wexler</u>, 317 F.3d at 576. Like the plaintiff in <u>Geiger</u>, Plaintiffs here have failed to prove that age was the real reason for their termination.

Having failed to proffer sufficient evidence such that a genuine issue of material fact exists with respect to whether Defendant's RIF was pretextual, Plaintiffs' disparate treatment age-discrimination claims fail.

### b.  Disparate Impact

Plaintiffs also contend that they can succeed under a disparate impact theory.[4]  Disparate impact claims, unlike disparate treatment claims, do not require the showing of an intent

---

[4] To prove discrimination, a plaintiff may show either that he or she was impermissibly treated differently from others (disparate treatment) or that an employer's employment practice adversely affected those in a protected group (disparate impact).

to discriminate; instead the theory is meant to protect individuals from the impact of unintentional discrimination. See, e.g., Griggs v. Duke Power Co., 401 U.S. 424 (1971). See also International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)(disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another"). The plaintiff under a disparate impact theory must isolate and identify a specific employment practice that is responsible for the disparate impact, recognizing that the ADEA provides that it shall not be unlawful for an employer to take any action otherwise prohibited where the differentiation is based on reasonable factors other than age discrimination. See Smith v. City of Jackson, 544 U.S. 228, 240 (2005)(affirming grant of summary judgment where plaintiffs failed to identify any specific test, requirement or practice within the challenged pay plan and finding plan based on reasonable factors other than age).

Plaintiffs primarily rely on their statistical data to prove disparate impact (doc. 87). Plaintiffs have not, however, articulated a "specific test, requirement or practice" of Defendant that has had an adverse impact on older workers. See Smith, 544 U.S. at 240. Merely providing statistics alleging that older workers were discharged in Defendant's RIF is insufficient in the disparate impact context. See, e.g., White v. American Axle &

<u>Manufacturing</u>, 2006 WL 335710, *6 (E.D.Mich.2006). In addition, Plaintiffs have not proffered evidence creating a genuine issue of material fact with respect to the "reasonable factor other than age" prong. Thus, Plaintiffs do not succeed under a disparate impact theory of age discrimination.

For the foregoing reasons, the Court GRANTS Defendant's Motions for Summary Judgment as to Counts I and III.

**B. Plaintiffs' Retaliation Claims: Counts II and IV**

To establish a <u>prima</u> <u>facie</u> case of retaliation under the <u>McDonnell Douglas</u> framework, a plaintiff must prove (1) that she engaged in protected activity; (2) that the exercise of plaintiff's rights was known to the defendant; (3) that plaintiff was the subject of an adverse employment action; and (4) that a causal link existed between the protected activity and the adverse action. <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 79 (1973).

Defendant argues that Plaintiff Gambill's retaliation claims fail procedurally because she failed to file a charge of retaliation with the Equal Emploment Opportunity Commission ("EEOC"), and fails on the merits because alleged non-compliance with the OWBPA does not establish retaliation as a matter of law (doc. 76., citing <u>EEOC v. UBS Brinson, Inc.</u>, 2003 U.S. Dist. LEXIS 570). Defendant contends that Plaintiff Gambill did not engage in a protected activity and that she suffered no adverse retaliatory action (<u>Id</u>.).

Defendant's Motion for Summary Judgment on Plaintiffs' retaliation claims is not opposed by Plaintiffs (doc. 87). Finding no genuine issue of material fact as to the retaliation claims, the Court GRANTS Defendant's Motions for Summary Judgment as to Counts II and IV of the Second Amended Complaint (doc. 44).

**C. Gambill's Promissory Estoppel Claim: Count V**

Plaintiff Gambill claims that the statements Paul Newton allegedly made to the effect that "he wanted [her] to remain with the company" and, "We're not supposed to make promises, but I sincerely hope you won't take the severance package," amounted to a promise of continuing employment upon which she relied to her detriment (doc. 44). To support a claim for promissory estoppel under Ohio law, the proponent must demonstrate "a promise, clear and unambiguous in its terms, reliance by the party to whom the promise is made, the reliance must be reasonable and foreseeable, and the party claiming estoppel must be injured by the reliance." Cohen & Co. v. Messina, 492 N.E.2d 867, 872 (Ohio Ct. App. 1985) (citations omitted).

The record is unclear regarding whether Newton had the power to affect Plaintiff Gambill's employment status with Defendant. If he did not have such authority, her promissory estoppel claim fails because any reliance she may have placed on his words would not have been reasonable. See, e.g., Dunn v. Bruzzese, 874 N.E.2d 1221, 1237 (Ohio Ct. App. 2007)(concurring

opinion).  Assuming, _arguendo_, that he did have such decision-making authority, Plaintiff Gambill's claim of promissory estoppel still does not survive Defendant's Motion for Summary Judgment because she has not adduced evidence sufficient to support a claim that Defendant clearly and unambiguously promised her a position in the company post-merger.  Newton's expressed "hope" or "want" simply does not rise to the level of a clear and unambiguous promise such that Plaintiff Gambill's status as an at-will employee should be altered.  <u>See</u>, <u>e.g.</u>, <u>Snyder v. A.G. Trucking, Inc.</u>, 57 F.3d 484, 489 (6th Cir. 1995).  In <u>Snyder</u>, the Sixth Circuit affirmed the district court's grant of summary judgment to the employer on the employee's promissory estoppel claim when the employee alleged that the president and vice-president of company told him that there would be a place there for him and that he would be given every opportunity to grow there.  <u>Id</u>.  The court found these statements to be generalized comments about future career development and were not sufficient to modify the at-will relationship.  <u>Id</u>.  Here, again assuming the truth of the allegation and assuming that Newton had the requisite decision-making power, as a matter of law his words do not rise to the level of a clear and unambiguous promise of continued employment.

Even if, however, Newton's words did rise to that level, such that Plaintiff Gambill's at-will status should be altered by the use of the promissory estoppel exception, Plaintiff Gambill has

failed to adduce evidence that any reliance on her part was reasonable. As the Sixth Circuit noted in a case interpreting Ohio's application of promissory estoppel to the employment setting, the test is "whether the employer should have reasonably expected its representation to be relied upon by its employee." Kasuri v. St. Elizabeth Hosp. Medical Center, 897 F.2d 845, 855 (6th Cir. 1990), quoting Kelly v. Georgia-Pacific Corp., 46 Ohio St. 3d 134, 139 (Ohio, 1989). According to Plaintiff Gambill, Newton prefaced his statement with a disclaimer: "We're not supposed to make promises..." (doc. 44). The only evidence produced on this claim is Plaintiff Gambill's recollection of what Newton told her. A jury simply could not reasonably find that Defendant should have reasonably expected Plaintiff Gambill to rely on anything Newton said, as he expressly disclaimed that he was offering any promise and implicitly stated he had no authority to. Newton's statements, accepting them as true, were simply statements of praise or generalized support and cannot be characterized as a promise upon which Defendant should have expected Plaintiff Gambill to rely. For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff Gambill's promissory estoppel claim, Count V of the Second Amended Complaint.

**D. Plaintiffs' Public Policy Claims: Count VI**

In Ohio, to state a claim of wrongful discharge in violation of public policy, a plaintiff must satisfy the following

four elements: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law; (2) dismissing employees under circumstances as those involved in plaintiff's dismissal jeopardizes the public policy; (3) plaintiff's dismissal was motivated by conduct related to the public policy; and (4) the employer lacked overriding legitimate business justification for the dismissal. <u>Collins v. Rizkana</u>, 73 Ohio St. 3d 65, 69-70 (Ohio, 1995).

Plaintiff Gambill claims that her employment termination violated Ohio's public policies against age discrimination and employer interference with an employee's right to seek legal advice (doc. 44). In addition to relying on the facts that form the basis of her statutory age-discrimination claims, Plaintiff Gambill relies here on the fact that the time between her being informed of her impending termination and the termination date itself was shorter than the time allowed others (doc. 87). This, she argues, is evidence of Defendant's retaliation against her for informing Defendant that she needed to seek legal advice when informed by Stempien that there was not a post-merger position for her at the company (<u>Id</u>.).

Ohio clearly has a policy against age discrimination in the employment context, as manifested, <u>inter alia</u>, by O.R.C. 4112.02 and O.R.C. 4112.14(A). Therefore, as to the age-related

public policy violation claim, the first element of the tort, the clarity element, is satisfied. However, when statutory remedies are available to provide full relief, Ohio courts have held that the common-law claim for violation of public policy is not also available. See, e.g., Leininger v. Pioneer National Latex, 875 N.E.2d 36, 44 (Ohio 2007). Because both the ADEA and O.R.C. 4112 provide sufficient statutory remedies for age discrimination, Plaintiffs' claim that Defendant violated Ohio's public policy against age discrimination fails.

To the extent Plaintiff Gambill's violation of public policy claim is premised on retaliation for having stated her desire to speak with an attorney after being informed that her employment was to be terminated,[5] the Court finds that she has adduced insufficient evidence to support the claim.

Plaintiff Gambill inappropriately relies on case law addressing retaliation in the Title VII context (doc. 87).

---

[5] Plaintiffs' Second Amended Complaint frames this issue as being a violation of state and federal anti-discrimination policies and of state and federal policies that "employers should not interfere with an employee's right to seek legal advice or mislead employees as to their legal rights and remedies" (doc. 44). However, Defendant frames the retaliation issue in its Motions for Summary Judgment as being solely tied to Plaintiffs' claims that they were retaliated against for complaining to Defendant about its conduct of age discrimination (docs. 76 and 77). Plaintiffs, in their response to the Motions, frame the retaliation issue as relating solely to Plaintiff Gambill's statement that she intended to seek legal advice (doc. 87). The Court addresses the claims as outlined in the Second Amended Complaint.

Plaintiff Gambill's retaliation claim is an alleged violation of public policy and, as such, should be assessed by the same rubric as all public policy violations: to state a claim for this wrongful discharge tort, Plaintiff Gambill must satisfy the clarity element, the jeopardy element, the causation element and the overriding justification element. <u>See Collins</u>, 73 Ohio St. 3d at 69-70.

Plaintiffs aver that Ohio has a clear public policy that "employers should not interfere with an employee's right to seek legal advice or mislead employees as to their legal rights and remedies" (doc. 44). Plaintiffs have cited no authority for this proposition, but Ohio courts have held that terminating an employee for exercising her right to consult a lawyer is "repugnant" to the state's public policy. <u>Chapman v. Adia Services, Inc.</u>, 688 N.E. 2d 604, 610 (Ohio App. 1997). Assuming the policy articulated by Plaintiff Gambill is encompassed by <u>Chapman</u>, thus satisfying the clarity element of the wrongful discharge tort, Plaintiffs have not only failed to allege conduct implicating the remaining three elements of the tort but they have failed to adduce evidence supporting those elements.

Finding no genuine issue of material fact as to Plaintiffs' claim of violation of public policy, the Court GRANTS Defendant's Motions for Summary Judgment as to Count VI.

**E. French's ERISA Interference Claim: Count IX**

Section 1140 of Title 29 of the United States Code

provides in relevant part that "It shall be unlawful for any person to discharge...a participant...for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." To prove a prima facie case of such ERISA interference, a plaintiff must prove: (1) prohibited employer conduct (2) taken for the purpose of interfering with the attainment of any right to which the employee is entitled. Pennington v. Western Atlas, 202 F.3d 902, 906 (6th Cir. 2000).

Plaintiff French argues that he was chosen for termination so that Defendant could avoid the liabilities of the full retirement benefits to which Plaintiff French would have been entitled had he retired having attained the requisite number of years of service for full retirement (doc. 44). Plaintiff French further argues that Defendant's refusal to grant him the additional points he needed in order to reach the requisite number that would have enabled him to retire early was interference with the attainment of his right to retirement benefits (doc. 87). Defendant argues that Plaintiff French is fully entitled to the benefits that vested before his termination and that he is in fact arguing that he should have been treated differently from the rest of the employees affected by the merger and been given extra points, conduct prohibited by ERISA (doc. 77).

The Court is persuaded by Defendant's arguments and finds that Plaintiff French has failed to adduce sufficient evidence such

that a reasonable jury could find that Defendant interfered with his receipt of benefits to which he was entitled. While Plaintiff French is correct that he need not prove that Defendant's sole purpose in terminating him was to interfere with his benefits (doc. 87), he simply has not produced evidence, even when interpreted in the light most favorable to him, which would lead a reasonable jury to find that Defendant interfered with ERISA benefits to which he was entitled. Instead, he rests his case on an assertion that he was "terminated just short of qualifying for early retirement and had advised Defendant of this fact on multiple occasions" (doc. 87). Even assuming this to be the case, and the record is not clear on this point, temporal proximity is simply insufficient in this case.

Plaintiff French relies on Pennington for the proposition that he must only demonstrate "[p]roximity to attaining eligibility for substantial benefits" in order to meet the purpose prong of the test (doc. 87). See Pennington, 202 F.3d at 907-8. In Pennington, the Sixth Circuit held that the district court did not err in finding that the employees had established their prima facie case because the plaintiffs were terminated a few years before reaching retirement age. Id. Notably, the Pennington court relied on Humphreys v. Bellaire Corp., 966 F.2d 1037, 1044 (6th. Cir. 1992), to reach this conclusion. See Pennington, 202 F.3d at 907-8. The plaintiff in Humphreys was discharged two months prior to his

pension vesting and the court stated, "Although it is no more than the bare minimum that a plaintiff must show to meet the prima facie case threshold, in this case it satisfies that low threshold because...the proximity to vesting provides at least some inference of intentional, prohibited activity." Humphreys, 966 F.2d at 1044. Plaintiff French has simply not met that "bare minimum." Defendant extended the possibility of retirement to more people than would otherwise have qualified for it as Defendant gave employees the benefit of a total of six extra points in the retirement calculation (doc. 77). Those six additional points simply eviscerate any inference attributable to temporal proximity as they have the effect of sweeping more employees into retirement, not fewer. Plaintiff French's problem, however, is that they were not enough to sweep him in. Simply put, under these facts, Plaintiff French's argument proves too much–if Defendant had offered seven additional points, that may not have been enough for Plaintiff French, but eight might have gotten him there. Of course, eight would not have been enough for other employees, who, under Plaintiff French's theory, could then argue interference because they fell outside of the sweep. And on it would go. Defendant extended the same additional points to all employees, and Plaintiff French has offered no evidence of the fact that those points were insufficient for him to retire early being in any way a causal link between his termination and any potential early retirement

benefits. On the contrary, Defendant absorbed liability for early retirement benefits for employees it would otherwise not have by giving employees the additional six points. The fact that Plaintiff French could not avail himself of the benefit of those extra points simply does not amount to ERISA interference.

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment as to Count IX

**F. French's FMLA Retaliation Claim: Count X**

Plaintiff French claims that Defendant terminated his employment as retaliation for Plaintiff French's multiple leaves of absence for his medical conditions, which is impermissible under the FMLA (doc. 44). <u>See</u> 29 C.F.R. § 825.220(c). To establish a prima facie case of retaliation under the FMLA, a plaintiff must offer evidence that he was (1) engaged in a statutorily protected activity; (2) that he suffered an adverse employment action; (3) that there was a causal connection. <u>See</u> <u>Skrjanc v. Great Lakes Power Svc. Co.</u>, 272 F.3d 309, 314 (6th Cir. 2001). To survive this Motion for Summary Judgment, Plaintiff French needed to have provided sufficient evidence to show that the exercise of his rights under the FMLA was a motivating factor in his termination. <u>See</u>, <u>e.g.</u>, <u>Edgar v. JAC Prods.</u>, Inc., 443 F.3d 501, 508 (6th Cir. 2006). He simply has not done this. Instead, the only evidence produced is a statement by Plaintiff French himself that he had a feeling retaliation was the motivating factor behind his dismissal

because he could see no other reason (doc. 77).  Plaintiff French has offered conjecture and supposition, but these cannot substitute for evidence.  Because a reasonable jury could not find that Defendant retaliated against Plaintiff French because of his absences, the Court GRANTS Defendant's Motion for Summary Judgment as to Count X.

**Conclusion**

For the foregoing reasons, the Court GRANTS Defendant's Motions for Summary Judgment (docs. 76 and 77).

SO ORDERED.

Dated: September 10, 2009          /s/ S. Arthur Spiegel
                                   S. Arthur Spiegel
                                   United States Senior District
                                   Judge